**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Tony Curtis Gilmore, ) | |
| ) | Civil Action No. 6:16-cv-00059-JMC |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Nancy A. Berryhill, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Tony Curtis Gilmore filed this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C §§ 405(g), 1383(c)(3). (ECF No. 1.)

This matter is before the court for review of the Report and Recommendation ("Report") of United States Magistrate Judge Kevin F. McDonald, issued in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a) (D.S.C.). (ECF No. 20.) On January 6, 2017, Magistrate Judge McDonald recommended that this court affirm the Commissioner's decision to deny Plaintiff disability insurance benefits ("DIB"). (ECF No. 20 at 36.) Plaintiff timely filed Objections to the Report ("Objections") on January 20, 2017 (ECF No. 22), to which the Commissioner filed a Reply on February 1, 2017 (ECF No. 23).

For the reasons set forth below, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 20) and **AFFIRMS** the decision of the Commissioner denying Plaintiff's claim for DIB.

### I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The Report contains a thorough recitation of the relevant factual and procedural background of this matter. (ECF No. 20 at 1-21.) The court concludes, upon its own careful

1

review of the record, that the Report's factual and procedural summation is accurate and adopts this summary as its own. The court will only reference background pertinent to the analysis of Plaintiff's claims.

Plaintiff was born on July 9, 1962, and is presently 55 years old. (ECF No. 11-3 at 4.) Plaintiff filed an application for DIB on August 11, 2006, which alleged disability since September 13, 2005. (ECF No. 11-5 at 17.) Plaintiff claimed he suffered from the following severe impairments: spinal stenosis, epidural fibrosis, degenerative disc disease of the lumbar spine, failed back syndrome, post lumbar laminectomy syndrome, lumbar spondylosis, left lumbar facet syndrome, and myofascial pain syndrome between September 13, 2005 and December 2, 2008. (ECF No. 20 at 3.) Plaintiff's initial DIB application was denied on November 2, 2006 (ECF No. 11-3 at 112), and also upon its reconsideration on February 26, 2007 (ECF No. 11-3 at 114). As a result, Plaintiff filed a request for an administrative hearing on March 3, 2007. (ECF No. 11-4 at 33.) On December 5, 2008, Plaintiff appeared at an administrative hearing before Administrative Law Judge Robert Egan ("ALJ Egan"). (ECF No. 11-2 at 91-112.) On May 5, 2009, ALJ Egan found that Plaintiff was not under disability as defined by the Social Security Act ("SSA") because Plaintiff could perform a significant number of jobs in the national economy. (ECF No. 11-2 at 12-25 (citing SSA § 1614(a)(3)(A)).) On March 2, 2011, the Appeals Council remanded the case to ALJ Egan for review because "the decision does not explain the weight given to a functional assessment by Dr. Ekunsanmi . . . to the assessments of medical consultants . . . [and] does not explain the weight given to a vocational opinion." (ECF No. 11-3 at 18-19.)

Plaintiff appeared at a second administrative hearing before ALJ Egan. (ECF No. 12-1 at 58-113.) After review, ALJ Egan granted Plaintiff a partially favorable decision on October 26,

2

2011, finding Plaintiff disabled beginning on August 1, 2009. (ECF No. 11-3 at 21-23.) On April 10, 2012, the Appeals Council remanded ALJ Egan's decision and reassigned the case to a different administrative law judge to "[f]urther evaluate [Plaintiff's] subjective complaints . . . [and] [g]ive further consideration to [Plaintiff's] maximum residual functional capacity . . . ." (ECF No. 11-3 at 43.)

Plaintiff appeared at his third administrative hearing held on October 2, 2012, before Administrative Law Judge Theresa R. Jenkins ("ALJ Jenkins"). (ECF No. 11-2 at 27-43.) ALJ Jenkins issued a partially favorable decision, finding the plaintiff disabled on December 3, 2008. (ECF No. 11-2 at 7.) Plaintiff's appeal was denied by the Appeals Council, which made ALJ Jenkins' decision the final decision of the Commissioner for purposes of judicial review at that time. (ECF No. 11-2 at 2.)

On June 19, 2013, Plaintiff filed an action in the United States District Court for the District of South Carolina against the Commissioner. (ECF No. 12-3 at 16-22.) On June 11, 2014, the court reversed the decision of the Commissioner and remanded the case back to the Commissioner for further proceedings. (ECF No. 12-3 at 8-11 (*Gilmore v. Colvin*, C/A No. 6:13-cv-01443-JMC (D.S.C. June 11, 2014) (ECF No. 43) (recommending that the court affirm the Commissioner's decision that Plaintiff was disabled since December 3, 2008 and "further recommends, upon the [Commissioner's] motion,[1] that the court reverse the [Commissioner's] finding that Plaintiff was not disabled prior to December, 3, 2008, and that the action be remanded for further proceedings"). On August 1, 2014, the Appeals Council informed Plaintiff that "[the court] . . . has remanded this case to the [Commissioner] . . . in accordance with the fourth sentence of section 205(g) of the Social Security Act." (ECF No. 12-3 at 4.) As the Magistrate Judge in this case points out, "the Appeals Council directed the ALJ to '[o]btain

---

[1] (ECF No. 37 ("Motion to Remand Pursuant to Sentence Four of 42 U.S.C. § 405(g)")

evidence from a medical expert to clarify the date of onset, give further consideration to the claimant's maximum residual capacity and provide the rationales, as well as obtain evidence from a vocational expert." (ECF No. 20 at 2.)

On November 20, 2014, Plaintiff appeared before ALJ Jenkins for his fourth administrative hearing. (ECF No. 12-2 at 2-48.) On February 19, 2015, ALJ Jenkins determined that "[Plaintiff] was not under a disability within the meaning of the [SSA] from September 13, 2005 through December 2, 2008, the relevant period in question." (ECF No. 12-1 at 20.) The Appeals Council denied Plaintiff's appeal on November 5, 2015, which made ALJ Jenkins' decision the final decision of the Commissioner for purposes of judicial review. (ECF No. 11-2 at 2.) On January 7, 2016, Plaintiff filed a Complaint seeking judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). (ECF No. 1.)

## II. LEGAL STANDARD

The Magistrate Judge makes only a recommendation to this court, which has no presumptive weight. Thus, the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976.) The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to for clear error, including those portions to which only "general and conclusory" objections have been made. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *See also Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision if it is supported by substantial evidence. *See Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Id.* "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157–58.

### III. ANALYSIS

*A. The Magistrate Judge's Review*

In the Report, the Magistrate Judge addressed Plaintiff's arguments that ALJ Jenkins erred by "(1) failing to consider the medical expert's opinion; (2) failing to properly assess medical evidence; and (3) failing to provide a meaningful assessment of his subjective complaints." (ECF No. 20 at 21.)

First, the Magistrate Judge summarized the foundation for his conclusion that substantial evidence supported ALJ Jenkins' disability determination:

5

> As argued by the Commissioner, Dr. Levine did not opine that [P]laintiff's restrictions while recovering from surgery would last for at least one full year. Social Security Ruling ("SSR") 83-20 provides that "[t]he onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or substantial gainful activity) for a continuous period of at least 12 months or result in death." [] A close reading of Dr. Levine's testimony reveals that he opined that [Plaintiff] would be capable of less than sedentary work on a sustained basis for one day less than one year (Tr. 876). Then, "allowing for some back pain of the postoperative fusion, failed back syndrome, and even adjusting for some epidural fibrosis, . . . from September 13, 2006 through December 2008," [Plaintiff] was capable of performing a range of light work, including lifting 20 pounds occasionally and ten pounds frequently; sitting six of eight hours; standing for three of eight hours, but no longer than 30 minutes at one time without sitting for one to two minutes; walking for two of eight hours, but no longer than 20 minutes at one time; avoiding uneven surfaces; occasionally navigating ramps and stairs with a railing; occasionally kneeling; occasionally crouching, stooping or bending, but not repetitively; should avoid ladders, scaffolds, crawling, heavy vibrating machinery, unprotected heights, and extreme cold exposure; and should avoid repetitive twisting of the lumbar spine or truck; and only the use of the upper extremities for fine and gross manipulation (Tr. 877-78).

(ECF No. 20 at 21-23.)

The Magistrate Judge further addressed Plaintiff's argument that ALJ Jenkins' discussion of Dr. Levine's testimony was "misleading":

> [W]hile the ALJ's assessment of . . . Dr. Levine's opinion could be clearer, the decision provides sufficient explanation for the RFC finding. The ALJ noted that Dr. Levine believed [Plaintiff] would be restricted to a less than sedentary position during his recovery from back surgery. However, the ALJ also noted that Dr. Levine testified that Dr. Ekunsanmi's opinion that [Plaintiff] was disabled starting in January 2005 did not correlate with the objective findings. (Tr. 738; *see* Tr. 876). The ALJ also reviewed other medical opinions from that same time frame and afforded them "significant weight" (Tr. 739). Specifically, the ALJ assigned "significant weight to the March 8, 2006 opinion of treating surgeon Dr. Brigham, who opined that [Plaintiff] could do whatever he was comfortable doing, even heavy lifting (Tr. 739; *see* Tr. 416) and that he could return to regular duties at that time . . . [t]he ALJ likewise gave "significant" weight to the opinion of Dr. Fleischer, who noted in May 2006 that [Plaintiff] was young and should be able to return to work (Tr. 739; *see* Tr. 417) . . . .

(ECF No. 20 at 23-24.)

The Magistrate Judge then directed his attention to ALJ Jenkins' assessment of Plaintiff's primary care physician, Dr. Ekunsanmi:

> The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case . . . [SSR] 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion . . .
>
> The ALJ considered the opinions [of Dr. Ekunsanmi] and gave them "little weight," finding that the opinions were not consistent with the other objective evidence, as discussed by medical expert Dr. Levine, and that as a primary physician he was not a specialist, and therefore his opinion was entitled to less weight (Tr. 738) . . .
>
> [Plaintiff] contends that it was in error for the ALJ to assign little weight to Dr. Ekunsanmi's December 2008 opinion because the ALJ found this opinion to be "controlling" in the previous December 14, 2012, decision. The [Plaintiff's] argument fails . . . the ALJ never assigned that opinion controlling weight and only assigned it "persuasive" weight to the extent it dealt with the [Plaintiff's] abilities as of December 3, 2008 – a period not at issue in this appeal . . . [and] the ALJ was to consider all issues de novo, including the weight of the medical opinion evidence, she was not required to assign Dr. Ekunsanmi's opinions the same level of weight in the decision at issue as in the prior decision.

(ECF No. 20 at 28.)

The Magistrate Judge also discussed Plaintiff's argument that ALJ Jenkins erred by discounting Dr. Ekunsanmi's medical opinion because he was not a specialist:

> This argument also fails. Pursuant to the [Social Security] regulations, the ALJ is permitted "to give more weight to the opinion of a specialist about medical issues related to his area of specialty than to the opinion of a source who is not a specialist." [] As discussed at the November 20, 2014 administrative hearing, the record showed that Dr. Ekunsami was a family practitioner, working in primary care (Tr. 867) . . . [t]he ALJ also properly discounted Dr. Ekunsanmi's opinions on the basis that they were not consistent with the "other objective evidence, as Dr. Levine, the impartial expert, testified to at the hearing."

(ECF No. 20 at 28 (citing 20 C.F.R. § 404.1527(c)(5)).)

Next, the Magistrate Judge addressed Plaintiff's assertion that only his treating physician, Dr. Ekunsanmi, had a medical opinion during the relevant period:

7

> This is incorrect, as Dr. Brigham opined on March 8, 2006, that the [Plaintiff] was capable of doing even heavy work (Tr. 416) and completed a work status report opining that the [Plaintiff] could return to regular duties (Tr. 450). Also, orthopedic surgeon Dr. Scott examined the [Plaintiff] during the relevant time period, and the ALJ gave significant weight to his findings (Tr. 739) . . . While Dr. Scott did not complete an RFC assessment, the ALJ properly considered Dr. Scott's medical findings on examination and afforded them significant weight along with the other medical evidence and opinions discussed above (Tr. 739).

In regard to the credibility assessment, the Magistrate Judge explained that ALJ Jenkins properly considered Plaintiff's subjective complaints and medical records:

> A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence . . . [f]urthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on" in evaluation of the claimant's subjective symptoms . . . .
>
> The ALJ found that while Plaintiff's impairments were "at least theoretically capable of producing at least some of the general subjective symptoms alleged" by [Plaintiff], his testimony as to the intensity, persistence, and limiting effects of those symptoms was "not persuasive in view of his daily activities and the inconsistencies in the record" (Tr. 736-37).
>
> The ALJ considered the following factors in assessing [Plaintiff's] subjective complaints: daily activities . . . the location, duration, and frequency of the pain, precipitating factors, and measures used to relieve pain . . . medication and side effects . . . and treatment beyond medication.
>
> The ALJ properly considered the inconsistencies in the medical record in assessing [Plaintiff's] subjective complaints . . . Plaintiff's September 15, 2003, surgery was "minimally invasive" . . . [a] January 2006 CT scan of the lumbar spine showed good position of hardware and subsidence of his graft . . . [a] March 2006 lumbar x-ray[] showed that [Plaintiff's] fusion had progressed . . . [i]n March 2006, Dr. Brigham opined that [Plaintiff] would ultimately be released without permanent restrictions and would not be considered permanently and totally disabled . . . [i]n May 2006, Dr. Fleischer opined that [Plaintiff's] whole person impairment was 10% to 17% to his lumbar spine only . . . [i]n June 2006, an MRI of the lumbar spine showed post-surgical changes [] but no evidence of recurrent disc herniation . . . [e]xamination with Dr. Okenneh revealed bilateral sacroiliac joint tenderness and a positive straight leg test, but a negative axial loading test and 5/5 (full) strength in all extremities . . . Dr. Scott noted that while [Plaintiff used a case, he was able to walk well without it and was muscular and well-developed.

8

(ECF No. 20 at 33-35 (citations omitted).)

Based on the forgoing considerations, the Magistrate Judge concluded that the Commissioner's decision should be affirmed because it was supported by substantial evidence in the record. (ECF No. 20 at 36.)

   B.  *Plaintiff's Objections and the Commissioner's Response*

Plaintiff objects and argues that (1) "the ALJ misinterpreted the medical expert's testimony to mean that while the claimant was recovering from surgery (September 2005 to September 2008) that he was not disabled," (2) "the ALJ failed to explain why Dr. Ekunsanmi's opinion was only accorded little weight," and (3) this decision fails to consider factors related to pain and medications in assessing Plaintiff's credibility. (ECF No. 22 at 1, 5, 7.)

In his first Objection, Plaintiff asserts that "[t]he Commissioner fails to show that the ALJ properly interpreted the medical expert's opinion and fails to properly discuss the medical evidence during the relevant time period." (ECF No. 22 at 5.) Plaintiff specifically argues that:

> [t]he Magistrate Judge states that the ALJ properly rejected the portion of the medical expert's opinion when he reviewed other medical opinions and afforded them significant weight. However, the ALJ also afforded significant weight to the medical expert's opinion (except for the opinion of Dr. Benson Hecker). This final point made by the Magistrate Judge does not support a finding that the ALJ properly interpreted Dr. Levine's opinion. The ALJ gave significant weight to all of the opinions during the relevant time period, but failed to recognize the conflict between the opinions and properly explain why he incorporated limitations assigned by one doctor but not another, both of whose opinions were accorded significant weight.

(ECF No. 22 at 5.)

Next, Plaintiff argues that:

> [t]he ALJ failed to properly explain why Dr. Ekunsanmi's opinion was only accorded little weight . . . the ALJ stated in the decision at hand that Dr. Ekunsanmi was not a specialist. However, in a previous Partially Favorable Decision Dr. Ekunsanmi's opinion was controlling, despite his note being a

9

>    specialist . . . the ALJ relies on medical evidence from prior to [Plaintiff's] surgery and from a time period in which [Plaintiff] has already been found to be disabled as reasons for according little weight to the opinion . . . [and] the ALJ fails to explain why a non-treating one-time evaluator's opinion would be accorded more weight than [Plaintiff's] treating opinion.

(ECF No. 22 at 5 (referencing (ECF No. 11-3 at 18-20)).)

In his third Objection, Plaintiff asserts that:

>    [Plaintiff] pointed out that the Appeals Council Remand Order directed the ALJ to provide rationale in support of the credibility finding . . . the [court] found that the ALJ's previous finding lacked a proper discussion of daily activities, location, duration, frequency, and intensity of the pain; factors that precipitated and aggravated the symptoms, the type, dosage, effectiveness, and side effects of any medications . . . [t]he Magistrate Judge responds that the ALJ discussed Plaintiff's daily activities, Plaintiff's pain levels and his side effects . . . [and] argues that the ALJ properly considered the objective evidence. [Plaintiff] asserts that while [sic] the Magistrate Judge can point to the ALJ's reference to activities of daily living, but there is no discussion by the ALJ as to why those activities are inconsistent with a finding of disability. Furthermore, the list of objective evidence cited in the [Report] is primarily from 2005 to 2006, a time period when Dr. Levine testified that despite that objective evidence he opined that [Plaintiff] would not be capable of sedentary work 8 hours a day, five days a week.

(ECF No. 22 at 7-8 (referencing the Appeals Council Remand Order (ECF No. 11-3 at 16-23) (vacating and remanding ALJ Robert Egan's disability determination)).)

In response, the Commissioner asserts that (1) Plaintiff's objections reargue the same issues raised in his initial brief, (2) substantial evidence supports the ALJ's assessment of the medical expert's opinion, (3) "substantial evidence supports the ALJ's discounting of Dr. Ekunsanmi's opinions." In the ALJ's 2015 decision, the ALJ was entitled to review Dr. Ekunsanmi's opinion de novo following remand; Dr. Ekunsanmi was not a specialist; and [Dr. Ekunsanmi's] opinion was inconsistent with the evidence of record," and (4) "substantial evidence supports the ALJ's credibility analysis, where the ALJ considered plaintiff's subjective complaints of pain in light of the objective medical record and Plaintiff's reported activities." (ECF No. 23 at 1, 3, 7, 11.)

*C. The Court's Ruling*

Upon review of the Report, the court finds that the Magistrate Judge performed a thorough analysis of the record. Plaintiff argues that the Magistrate Judge's Report is improper because (1) the ALJ failed to include testimony from Dr. Levine concerning Plaintiff's disability, (2) the ALJ failed to explain why Dr. Ekunsanmi's opinion was given little weight, and (3) the Magistrate Judge failed to consider evidence in favor of Plaintiff's credibility. (ECF No. 22.)

*1. Whether the ALJ Properly Evaluated Dr. Levine's Expert Opinion*

As a first Objection, Plaintiff claims the court should overrule the Report because (1) "[t]he Commissioner's argument and the Magistrate Judge's conclusions are not based on the testimony of Dr. Levine, are not mathematically correct, nor are they acceptable given the post hoc rationale," and (2) Dr. Levine's expert opinion was disregarded improperly. (ECF No. 22 at 2, 3.)

In general, a claimant is disabled if they "are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1527 ("Evaluating opinion evidence"). Plaintiff claims that "Dr. Levine specifically stated that [Plaintiff] would be less than sedentary capable from 9/13/05 until 9/13/06." (ECF No. 22 at 2 (Tr. 876).) However, Dr. Levine testified verbatim:

> Now, Your Honor, that being said, in my opinion, a fusion, spinal fusion takes approximately 12 months to become radiographically, clinically and functionally healed or totally solvent. And it's my opinion that during that period, an individual really is not capable of even sedentary work on a sustained basis, six out of eight hours a day, five days a week. So that in my opinion, I feel he would be less than sedentary capable from *9/13/05 until 9/13/06*. So that, from what I understand now, leaves the question of *between 9/13/06 and December 2008*, is that correct?

(ECF No. 12-2 at 35 (emphasis added).)

The court agrees with the Magistrate Judge's finding that "[a] close reading of Dr. Levine's testimony reveals that he opined that [Plaintiff] would be capable of less than sedentary work on a sustained basis of one day less than one year." (ECF No. 20 at 22.)

Next, ALJ Jenkins did not disregard Dr. Levine's expert testimony improperly. *See Hines v. Barnhart*, 453 F.3d 559, 562–63 (4th Cir. 2006). "[Residual functional capacity][2] is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Further, "the ALJ may give great weight to expert's opinion without including every finding, limitation, and assessment contained in the expert's record." *Cook v. Colvin*, No. 2:13-cv-30155, 2015 WL 430880, at *12 (S.D. W. Va. Sept. 23, 2013). In her review, ALJ Jenkins also relied on other medical opinions in the record:

> I give significant weight to Craig Brigham, M.D., his orthopedic surgeon, who reviewed the claimant's computerized tomography, or CT scan, of the lumbar spine, as showing good position of hardware and subsidence of his graft . . . Dr. Brigham noted that although [Plaintiff] feels bitterly that he has some pain, Dr. Brigham told him as he instructed him before surgery that he would allow him to do whatever he feels comfortable doings [sic], including heavy lifting (Exhibit 2F). Dr. Brigham opined that [Plaintiff] would ultimately be released without any permanent restrictions and he would not be considered permanently and totally disabled (Exhibit 2F).
>
> I give significant weight to Thomas G. Fleischer, M.D., an orthopedist who was consulted for a second opinion, opined that [Plaintiff] was at maximum medical improvement and that his whole person impairment was ten to seventeen percent his lumbar spine only and that [Plaintiff] was able to ambulate using a cane, on May 15, 2006, as well as his opinion that [Plaintiff] could return to the work force, and discontinue narcotics (Exhibit 22F).

---

[2] "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations. We will assess your residual functional capacity based on all the relevant evidence in your case record . . . In assessing the total limiting effects of your impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence, including the information described in § 404.1529(c)." 20 C.F.R. § 404.1545(a)(1), (e) ("Your residual functional capacity").

> I give significant weight to Glenn Scott, M.D., an orthopedist, who opined on October 23, 2007 that [Plaintiff] is a muscular, well-developed male, who walks with the use of a cane, but who ambulates well without the cane (Exhibit 26F).

(ECF No. 12-1 at 26.)

Upon consideration of the summaries above, the court is persuaded that ALJ Jenkins' conclusions sufficiently meet the requirements of 20 C.F.R. § 404.1527 and 20 C.F.R. § 404.1545. The court is not convinced by Plaintiff's Objection and agrees with the Magistrate Judge that substantial evidence supports ALJ Jenkins' evaluation of Dr. Levine's testimony.

*2. Whether the ALJ Properly Considered Dr. Ekunsanmi's Opinion*

If a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted." Social Security Ruling ("SSR") 96–2p, 1996 WL 374188, at *1 (S.S.A. July 2, 1996); *see also* 20 C.F.R. § 416.927(c)(2). Section 416.927(c) provides that, if a treating source's opinion is not accorded controlling weight, the ALJ is required to consider "all of the following factors in deciding the weight we give to any medical opinion": (1) examining relationship ("[g]enerally, we give more weight to the opinion of a source who has examined you than the opinion of a source who has not examined you"); (2) treatment relationship, including length of treatment relationship, frequency of examination, and the nature and extent of the treatment relationship; (3) supportability ("[t]he more a medical source presents relevant evidence to support an opinion . . . the more weight we will give that opinion"); (4) consistency; (5) specialization; and (6) other factors. *Id*. "However, the Fourth Circuit has not mandated an express discussion of each factor and another court in this district has held that 'an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his decision." *Kirby v. Colvin*, No. 4:13-cv-3138-DCN,

13

2015 WL 1038036, at *3 (D.S.C. Mar. 10, 2015) (quoting *Hendrix v. Astrue,* No. 1:09-cv-1283, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010)); *see* 20 C.F.R. § 416.927(c)(2) (requiring ALJ to give "good reasons" for weight given to treating source's opinion). "A district court will not disturb an ALJ's determination as to the weight to be assigned to a medical opinion, including the opinion of a treating physician, "absent some indication that the ALJ has dredged up 'specious inconsistencies' . . . or has not given good reason for the weight afforded a particular opinion." *Id.* (quoting *Craft v. Apfel*, No. 97-2551, 1998 WL 702296, at *2 (4th Cir. Oct. 6, 1998) (per curiam) (unpublished table decision) (internal citation omitted).

In her decision, ALJ Jenkins stated, "I give little weight to Bamidele Ekunsanmi, M.D., who is not a specialist, but a family practitioner, whose opinion, which supports a finding of 'disability' is not consistent with the other objective evidence, as Dr. Levine, the impartial expert testified to at the hearing." (ECF No. 12-1 at 25.)

Dr. Levine testified that:

[I]n discussing an RFC, as I mentioned, I didn't feel a [1.04B] listing would be met. Dr. Ekunsanmi, as I said I think is a family practitioner, opined that the claimant was, quote, disabled from any work. And he mentioned in one note that this was since 2005 and he was able to work during that time, so I'm not sure how valid that opinion is. It would appear to me that he's basing his opinion primarily on the subjective complaints of pain and/or statements of limitations of the claimant. But I felt the objective findings did not correlate with a total disability. And the reference to the 2F, page one, dated 3/8/06 from Dr. Brigham, who was the operating surgeon, who stated at the time there was no objective, quote, no objective reason to even restrict heavy lifting and that was on 3/8/06. And Dr., as I mentioned, Dr. Ekunsami declared the claimant totally disabled since the first visit on 1/1/05 and he expressed that in Exhibit 39F, page one, dated 8/6/2012. And as I mentioned, the claimant was working during that time and in fact, in Exhibit 2F, page seven, dated 8/5/05, he was noted that he was working 12 hour shifts, and the doctor limited him to six hours after that. So I, allowing for some back pain of the postoperative fusion, failed back syndrome, and even adjusting for some epidural fibrosis, orthopedically and objectively, I felt during that period, from September 13, 2005 through December 2008, he should have been capable of lifting occasionally 20 pounds, frequently 10. And I'm talking about objectively and orthopedically now . . . .

14

(ECF No. 12-2 at 35-36.)

After considering the aforementioned summary explaining the weight rendered to Dr. Ekunsami's opinion, the court is persuaded that ALJ Jenkins' conclusions sufficiently met the requirements of SSR 96-2p and 20 C.F.R. § 416.927(c). In her review, ALJ Jenkins indicated, albeit imprecisely, that the opinions of the specialists were granted more weight in accordance with section 416.927(c)(5) ("Specialization") because "[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." Accordingly, the court agrees with the Magistrate Judge's determination that substantial evidence supports ALJ Jenkins' decision.

*3. Whether the ALJ Properly Considered Plaintiff's Credibility*

As a third Objection, Plaintiff claims that the Magistrate Judge supported the ALJ's consideration of the objective evidence, but omits a justification as to "why" Plaintiff's daily activities, pain levels, medications, and affiliated side effects are inconsistent with a finding of disability. (ECF No. 22 at 7-8.) However, it seems that Plaintiff confuses an ALJ's requirement to provide clear reasons in his determination as a requirement for the Magistrate Judge. (ECF No. 23 at 11 n.5 ("Plaintiff attempts to impose an articulation requirement that is simply not listed in 20 C.F.R. § 404.1529").)

When determining credibility, "[f]irst, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical physiological, or psychological abnormalities and which could reasonably be expected to produce pain or other symptoms alleged." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)). Once the threshold determination has been met, the intensity and persistence of a plaintiff's pain and the extent it affects their ability to work are then evaluated.

15

*Id.* at 595. "Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also 'all available evidence,' including the claimant's medical history, medical signs, and laboratory findings . . . any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, *see* 20 C.F.R. § 416.929(c)(3) & 404.1529(c)(3)." *Id.* at 595. "Credibility is the providence of the ALJ." *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1499 (10th Cir. 1992). When an ALJ has given specific, legitimate reasons for disbelieving a plaintiff's testimony, the reviewing court should "generally treat credibility determinations made by an ALJ as binding upon review." *Gossett v. Bowen*, 862 F.2d 802, 907 (10th Cir. 1988).

In this case, the Magistrate Judge outlined that the Fourth Circuit Court of Appeals has a "two-step process . . . [f]irst, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged…" (ECF No. 20 at 31-32 (citing *Chater*, F.3d 585 at 594-95).) In addition, the Magistrate Judge explained:

> [A Fourth Circuit] panel held, '[h]aving met this threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test . . . [but] [o]bjective medical evidence of pain, its intensity or degree (i.e. manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption, if available should be obtained and considered . . . [a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the

claimant alleges she suffers.

(ECF No. 20 at 32 (citing *Hines*, 453 F.3d at 565 (4th Cir. 2006)).)

In the Report, the Magistrate Judge disclosed the factors[3] that ALJ Jenkins used in her comparison of the medical records and Plaintiff's subjective complaints:

> The ALJ considered the following factors in assessing Plaintiff's subjective complaints . . . daily activities (Tr. 736 (noting that [Plaintiff] reported living at home; drove; did not cook because he did not know how; and did no cleaning, though he helped wash dishes); the location, duration, and frequency of the pain, precipitating factors, and measures used to relieve pain (Tr. 736 (reviewing [Plaintiff's] testimony regarding his alleged back pain and that [Plaintiff] asserted that he was unable to stand longer than 30 minutes to one hour, and that he could not sit for longer than two hours because his legs go numb); medication and side effects (Tr. 736-38 (nothing that [Plaintiff's] medication at various times included Valium Lyrica, Lortab, and Duragesic, and that [Plaintiff] testified that his medication made him drowsy); and treatment beyond medication (Tr. 737-38 (noting that following his September 2005 L5-S1 fusion, [Plaintiff] was prescribed physical therapy and a [transcutaneous electrical nerve stimulation] unit, and later underwent lumbar injections on an intermittent basis.

(ECF No. 20 at 34-35.)

After a thorough review of the summaries above, the court finds that the ALJ provided specific and legitimate reasons for her decision related to Plaintiff's credibility. Plaintiff's Objection does not suggest any new arguments that would cause the court to reject the Report. *See e.g.*, *Felton v. Colvin*, C/A No. 2:12-cv-558, 2014 WL 315773, at *7 (E.D. Va. Jan. 28, 2014) (quoting *Gonzalez-Ramos v. Empresas Berrios, Inc.*, 360 F. Supp. 2d 373, 376 (D.P.R. 2005) ("[t]he court may reject perfunctory or rehashed objections to [Reports] that amount to a

---

[3] (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. (ECF No. 20 at 33-34 (citing 20 C.F.R. § 404.1529(c)).)

'second opportunity to present the arguments already considered by the [Magistrate Judge]'")

## IV. CONCLUSION

For the reasons above, the court **ACCEPTS** the Report (ECF No. 20) and **AFFIRMS** the decision of the Commissioner denying Plaintiff's claim for DIB.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 30, 2017
Columbia, South Carolina